GERMAN FIRE INS. CO. OF PEORIA v. WALKER.

(Court of Civil Appeals of Texas. Texarkana. March 21, 1912. Rehearing Denied April 25, 1912.)

1. INSURANCE (§ 163*) — FIRE INSURANCE — PROPERTY INSURED—"GRAIN"—"BRAN."

A fire policy on stock of "grain" in a building occupied as grain warehouse covers the part of the stock therein consisting of "bran," a product from grinding wheat.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 339–346; Dec. Dig. § 163.*

For other definitions, see Words and Phrases, vol. 4, pp. 3145–3146.]

2. EVIDENCE (§ 471*)—CONCLUSIONS.

One's testimony that his books were kept according to the usual and ordinary system adopted by business men in similar enterprises is not objectionable as a mere conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;* Witnesses, Cent. Dig. §§ 833–836, 988.]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Any error in admission of evidence is harmless; the witness having, in other parts of his testimony, stated, without objection, substantially the same facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

Error from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by J. L. Walker against the German Fire Insurance Company of Peoria. Judgment for plaintiff; defendant brings error. Affirmed.

Wm. Thompson and Geo. S. Wright, both of Dallas, for plaintiff in error. Capps, Cantey, Hanger & Short and David B. Trammell, all of Ft. Worth, for defendant in error.

HODGES, J. This is a suit by the defendant in error upon an insurance policy issued by the plaintiff in error to recover a loss sustained by the burning of a stock of goods consisting of corn, wheat, oats, bran, chops, sacks and twine. In addition to the usual allegations in such suits, the defendant in error pleaded the existence of a custom

in Ft. Worth, among insurance companies and agents, of including bran under the general designation of grain in issuing policies of insurance on such stocks. Plaintiff in error answered by general demurrer, general denial, and further (1) that there was a violation of the iron safe, or record warranty, clause; (2) that the policy sued upon contained a 100 per cent. coinsurance clause; that the loss to the plaintiff's property was not total, but partial; that the property destroyed did not exceed the sum of $7,500; and that defendant could only be held liable for its proportion of the loss, considering the other policies outstanding on the property. By a supplemental petition, the defendant in error pleaded a waiver of the breaches of the policy alleged by defendant. The case was submitted to a jury on special issues. Upon the findings made, the court rendered a judgment in favor of the plaintiff in the suit for the sum of $1,377.60.

The policy of insurance was issued September 28, 1908, for the sum of $1,500, and contained the coinsurance clause pleaded by the plaintiff in error. It also contained the following description of the property insured: "Form 12. Grain Policy Form. $1,500. On stock of grain and sacks owned or held by assured in trust or on commission or on joint account with others, or sold but not delivered, while contained in the one-story composition-roofed frame building occupied by assured as a grain warehouse situated on the southeast corner of Railroad and Missouri avenues, Fort Worth, Texas." A fire occurred a short time after the issuance of the policy, in which the greater portion of the stock on hand was destroyed. According to the testimony of Walker, the defendant in error, the total insurance carried by him at the time of the fire amounted to $21,500. The jury found that the value of the property destroyed was $19,394.20, and that about one-half of this consisted of bran. The jury also found that the assured had taken an inventory, in compliance with the terms of his policy, and had kept a set of books which clearly and plainly presented a complete record of all business transactions, including purchases, sales, and shipments, etc.; that those books and inventory were kept securely locked in an iron, fireproof safe at night; that after the fire the plaintiff in the suit tendered to the representative of the defendant all of the books, records, and papers used or kept in the business, and gave to the representative of the defendant the books, papers, records, and invoices, showing a complete record of the business transacted by him. There were other findings made by the jury upon other issues submitted by the court, which we deem it unnecessary to here consider.

The evidence shows that just prior to the issuance of this policy the defendant in error carried about $7,000 of insurance in companies represented by an agent in Ft.

Worth named S. M. Furman; that by reason of the reduction in the rates of insurance at that time those companies refused to carry the insurance any longer. Not being able to place this insurance in any of the companies which he represented, Furman applied to Pawkett, Anderson & Co., who were the representatives of the plaintiff in error, and procured the issuance of this policy and two others, for the purpose of furnishing the insurance which had been canceled for the reason stated. There was considerable controversy upon the trial as to whether or not, in procuring that policy, Furman was the representative of the plaintiff in error. This controversy induced the court to submit several special issues regarding those questions, which we deem it unnecessary to consider.

Plaintiff in error requested a peremptory instruction, directing a verdict in its favor, upon the ground that the undisputed evidence showed that after the fire Walker had altered his books, so as to show a greater loss than he had in fact sustained, for the purpose of collecting more money than he was entitled to. That fact was disputed, and was settled by the court below adversely to the plaintiff in error.

[1] Under the facts as found by the jury, it is clear that plaintiff in error was due some amount upon its contract of insurance. By giving it the benefit of the coinsurance clause, this sum was less than the face of the policy; how much less is the question here involved. The contest seems to have been over the construction which should be given to the clause describing the property insured. In short, it is whether or not the terms there used included bran. Considerable testimony was introduced by the defendant in error, over the objections of the plaintiff in error, tending to show the existence in Ft. Worth, among the agents of insurance companies, of the custom alleged in the pleading; and many of the assignments of error are based upon the action of the court in overruling those objections. If the construction which we think should be placed upon the policy be the correct one, the rulings upon those questions become immaterial, and the errors, if any, harmless. The testimony showed that bran was usually and commonly carried by the defendant in error as a part of his stock in that particular warehouse, and that bran was generally recognized and considered as a part of the stock of a dealer in grain, and as such was included in the usual contents of a grain warehouse. We judicially know that bran is a product made by grinding wheat, a recognized species of the grain family. It is grain reduced to another form, and may well be included within the generic term "grain," when considered as an object of insurance in a mixed stock with other grains. The propriety of that construction is strengthened by the fact that as an insurable risk it is no more

hazardous than wheat, corn, and oats. 20 Cyc. 1288, and notes. It is true that on the trial of this case one witness testified that bran was more hazardous; but this statement was contradicted by the testimony of two others. All of the issues of fact, not submitted to the jury, must be considered as having been determined by the court in a manner that will support the judgment rendered. Hence the judgment rendered settled that issue in favor of the equality of the risks.

[2, 3] In the sixth assignment, the plaintiff in error complains of the admission of the following testimony, given by the defendant in error, Walker: "I have made inquiry, and have found out how books are kept generally by grain dealers. My books are kept in the usual and ordinary method in which men engaged in a similar business to mine keep their books; that is the system." To this testimony, the plaintiff in error objected, upon the ground that it was a mere conclusion of the witness, was secondary evidence, and was immaterial, irrelevant, and incompetent. We do not think the objection is tenable. There could be no reason why, if he knew, the witness should not be permitted to testify that his books were kept according to the usual and ordinary system adopted by business men engaged in similar enterprises. The objection, if tenable, would be harmless, for the reason that Walker stated substantially the same facts in other portions of his testimony, to which no objection was made.

In view of the conclusion we have reached regarding the comprehensiveness of the clause of the policy describing the property insured, the questions raised by the remaining assignments of error become immaterial.

The judgment of the district court will therefore be affirmed.