## HANOVER FIRE INS. CO. OF NEW YORK v. MOORE.    (No. 10990.)*

(Court of Civil Appeals of Texas.    Fort Worth.    March 7, 1925.    Rehearing Denied April 11, 1925.)

1. Insurance ⬳335(2)—Inventory from which class, kind, amount, and value of articles making up insured stock may be ascertained with reasonable certainty, sufficient.

Inventory from which class, kind, amount, and value of various items of goods making up insured stock can be ascertained with reasonable certainty by persons familiar with such matters is sufficient compliance with requirement of fire insurance policy; rule requiring complete itemized list being reasonably construed.

2. Insurance ⬳335(2) — Inventory of goods constituting insured stock held sufficient.

Inventory of insured stock, wherein number of items listed indefinitely at values stated in round numbers was inconsiderable as compared with those not questioned, held sufficient compliance with requirement of fire insurance policy, where enabling insurer's adjuster to ascertain class, kind, amounts, and value of merchandise with reasonable certainty.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by T. A. Moore against the Hanover Fire Insurance Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

---

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

M. W. Burch and H. E. Lobdell, both of Decatur, for appellee.

CONNER, C. J. The appellee, T. A. Moore, instituted this suit on the 7th day of May, 1923, in the district court of Wise county, against the appellant, the Hanover Fire Insurance Company of New York, to recover the sum of $1,500, the alleged value of a certain stock of merchandise covered by a policy of insurance, executed by the appellant company, in appellee's favor, situated in the town of Greenwood, Wise county. The stock of goods was alleged to consist principally of drugs, chemicals, brushes, toilet articles, snuffs, tobaccos, cigars, books, pencils, tablets, and other merchandise such as is usually kept for sale in a drug store.

It was further alleged that said merchandise was destroyed by fire on the 11th day of October, 1922, while said goods was owned by appellee, and said policy was in force. It was further aleged that plaintiff had duly performed all the conditions required of him by the terms of the policy, and had, in due time after the fire, given to the defendant due notice and proof of the fire and loss.

Appellant appeared and answered, and the material issues formed by the pleadings of the parties were all specially submitted to a jury, and answered in appellee's favor, and judgment duly entered, from which appellant has duly prosecuted this appeal.

The record has been carefully considered, and we think there is but one material question necessary to discuss. Appellant, among other things, specially pleaded a three-fourths value clause contained in the policy, which was to the effect that, in the event of a loss or damage by fire to the property insured under the policy, the company should not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured at the time immediately preceding such loss or damage, and further pleaded the "record warrant clause" contained in the policy (which applies to stock only), and which, so far as necessary to here notice, reads:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within 12 months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within 30 days after the date of this policy, or in each and either case, this entire policy shall be null and void."

Appellant further pleaded the customary iron safe clause and that appellee had failed to keep a proper set of books. But inasmuch as the jury's findings in appellee's favor of these issues are not seriously assailed, we will devote ourselves to a discussion of appellant's contention that appellant failed to comply with the terms of the policy requiring the taking of an inventory within thirty days after the issuance of the policy. The jury found that this had been done, but appellant's insistence is that the evidence does not warrant the finding and that the court should have given its special instruction directing a verdict for appellant.

The appellee attached as an exhibit to his petition an inventory which he positively testified had been taken within 30 days from the date of the issuance of the policy under consideration. This inventory was also introduced in evidence. It covers more than 12 pages of the statement of facts, and consists of approximately some 900 items, which appellee testified aggregated in value something over $4,000. Appellant insists, however, that it was not properly itemized, and hence does not constitute an "inventory" within the meaning of the warrant clause above quoted. A number of items listed do seem quite indefinite. To illustrate, the following:

Case and goods.................................. $400 00
1 lot narcotic drugs............................ 100 00
1 lot spectacles................................ 100 00
1 lot paint....................................... 100 00
1 lot jewelry................................... 10 00
1 lot crude drugs............................... 35 00
Alcoloipar med.................................. 27 80
1 lot perfume................................... 20 00
1 lot books..................................... 200 00
Cigars and tobacco............................. 20 00
Fishhooks and lines............................ 20 00

In Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661, our Supreme Court had this to say:

"An itemized inventory is one that specifies the different articles composing the stock insured, and if that which has been offered as a substantial compliance with this requirement does not furnish the means of ascertaining the same facts that an inventory would, then it cannot be held to be a substantial compliance with the contract. The object of having the inventory made was not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock in order that the insurance company might test the correctness of the claim in two respects (1) whether the articles of which the stock was composed all belonged to the classes of property covered by the policy; and (2) whether the valuation attached to the different items, and which went to make up the total sum expressed, was reasonable. The failure to produce an inventory or that which is equivalent in these particulars could not be held to be a substantial compliance with the requirements of the policy. Roberts, Willis & Taylor Co. v. Insurance Co., 19 Tex. Civ. App. 338. If the assured had furnished anything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the

636 SOUTHWESTERN REPORTER (Tex.

court, but when there is no compliance whatever there can be no question of a substantial compliance with such requirements."

This was said in a case where no inventory at all had been produced upon the trial, and reliance was had upon certain books and invoices. The court, in this connection, also said:

, "In the case of Brown v. Insurance Co., 89 Tex. 594, this court upon careful consideration held that insurance contracts are governed by the same rules as contracts between individuals, and that only substantial compliance with the requirements of the iron safe clause was necessary to entitle the assured to the benefits of the policy, and upon further consideration of the question we are satisfied that our conclusion reached in that case correctly expresses the law."

Appellant also cites Merchants' & Manufacturers' Ins. Exch. v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 312; Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661; Insurance Co. v. Davis (Tex. Civ. App.) 167 S. W. 175; Dorroh v. Orient, 104 Tex. 199, 135 S. W. 1165; Roberts, Willis, etc., Co. v. Insurance Co., 13 Tex. Civ. App. 64, 35 S. W. 955; Fire Ass'n v. Calhoun, 28 Tex. Civ. App. 409, 67 S. W. 153; Insurance Co. v. Monger & Henry (Tex. Civ. App.) 74 S. W. 792. To these may be added Commonwealth v. Lawrence (Tex. Civ. App.) 244 S. W. 200. These cases, however, we think are distinguishable from the one we have before us in material particulars. To illustrate, in the case of Roberts, Willis & Taylor Co. v. Insurance Co., 13 Tex. Civ. App. 64, 35 S. W. 955, it was shown that a detailed inventory of the property had been taken but had been destroyed in the fire, and the summary thereof had been entered in a ledger which was the only evidence relating to that subject. The summary was as follows:

| | |
|---|---:|
| Dry goods, boots, shoes, and clothing........ | $1,210 00 |
| Groceries and hardware...................... | 800 00 |
| Drugs and medicines......................... | 400 00 |
| Jewelry ..................................... | 350 00 |
| Books and stationery......................... | 100 00 |
| Fixtures ..................................... | 156 00 |
| Total ..................................... | $3,035 43 |

The court held this summary not to be a sufficient compliance with the warranty clause.

In the case of Insurance Co. v. Monger & Henry (Tex. Civ. App.) 74 S. W. 792, the court stated that most of the matters stated in the inventories offered in evidence was a mere summary of the condition of the appellee's stock of goods at the time that the inventories were taken, and was not an itemized statement of the character of inventory as required in the cases cited. But in this case the number of items listed that appear more or less indefinite, as compared with those about which no question is made, seem to be inconsiderable. The rule relating to

the subject, supported by the authorities, undoubtedly is that in such cases there need be only a substantial compliance, and if the inventory produced furnishes with reasonable certainty the information required by the warranty clause, it will be sufficient.

Upon the trial appellant offered a witness in its behalf who testified to the effect that he was a price auditor, and he was given the inventory under consideration and requested to verify the prices as being correct on the date of the fire. He testified:

"I have made that verification as nearly as I could. Several items on there could not be verified because they were not specified plain enough. Of those items that cannot be verified, one is a lot of narcotic drugs; one is a lot of spectacles; a lot of paints; a lot of jewelry; a lot of crude drugs; stationery and tablets, no quantities given, $125; impossible to verify that, because no specification; don't know what it is; and a lot of books, $200, that cannot be verified for the same reason; and a lot of Lloyd's specific tinctures, cannot be verified, $100; and some miscellaneous items; legal cap paper, $3.60; $4 worth of pills, assorted, cannot be verified. * * *

"I have mentioned several articles I could not check because of information lacking. Almost all of the list can be verified with the exception of 10 or 12 or 15 items. I went through each item I could check; took each one separately on the list for the purpose of fixing correct prices. I put down the correct figures out by the side of the typewritten figures. * * *

"My total is $3,331.23. I do not know the freight on that amount of goods, or the cost of shipping to Greenwood. The prices I have given are just the wholesale prices that prevailed in Fort Worth at that time, fixed by me from price lists."

In explanation of the first item we noted above as being indefinite, to wit, the prescription case, the following question was propounded and answer given by the witness:

"In so far as that item is concerned, is there any list anywhere of goods in the prescription case? In other words, are these items lumped at $400; are they detailed anywhere on this list? A. Yes, sir; they are listed over here on the sheet labelled 'Prescription Case,' but the case is listed on the sheet marked 'Fixtures.' "

It was also shown that by letter of date December 12, 1922, that the settlement of appellee's claim was referred to the "Bates Adjustment Company, at Dallas," and that a Mr. Nelms, representing that company as an adjuster, visited the scene of the fire, and among other things, examined the inventory under consideration. The appellee testified that:

"He (Nelms) taken it, and ran over it and says, 'Well, that is all right.' He did not offer any objection to it in any way. He said something about he didn't just understand some little thing; I don't remember what it was. I explained it to him. With reference to the just-

ness of that claim, and the allowance of it, he said I had more than enough stuff to cover it; says, 'You will get your money in ten days or two weeks.' He said it would be paid."

Rev. J. W. Bailey, who as agent issued and delivered the policy in question, testified to the effect:

That the fire occurred on October 11, 1922, and that some two or three weeks, possibly four, he was not sure, Nelms "visited me on his return, after having viewed the fire; came back and said he had been out to Greenwood. At that time he told me that he had inspected the inventories. * * * I asked him something like this: 'What about it? Did you settle that?' He says, 'No;' and I says, 'Well, do you think he had sufficient stock?' He says, 'Yes; the books show—his books, though roughly, or rudely, or some word of that kind, kept' —he said, 'I believe he had stock enough to cover it,' and repeated again, 'The books show rather roughly kept; couldn't tell much about it;' but I don't remember him saying it would be settled in two or three weeks; I don't remember that.

"Q. I don't ask you to repeat the exact words used by Mr. Nelms in his conversation with you, but I will ask you if he did not state in substance on that occasion that he had examined the books, and that they were satisfactory? A. He did not say in those words, 'They were satisfactory;' but his remarks to me were that his books showed that he had the stock sufficient to justify payment of the policy; but he added that word, 'rudely kept,' or something like that—I have forgotten the exact language."

At appellant's request, the court gave the following special charges to the jury:

"(1) Did Horace Nelms, as agent of the Bates Adjustment Company, to whom the loss on the policy sued on herein was referred for adjustment, call on the plaintiff at Greenwood about two months subsequent to the fire in question, and inspect the inventory, cash and credit sales books, and invoices introduced in evidence by plaintiff?

"(2) If you answer the foregoing question in the affirmative, then state whether or not said Nelms, then on said occasion, stated in substance to the plaintiff Moore, 'that the invoice shown and exhibited to him was satisfactory, and the record of the cash and credit sales were satisfactory, and that plaintiff's policy would be paid within two weeks or ten days?"

Both questions were answered by the jury in the affirmative. Relating to this subject,

the court submitted the following issue, and gave the following charge, to wit:

"(1) Is the inventory, introduced in evidence and claimed to have been made after the policy in question was issued, a complete itemized inventory of the stock of goods then on hand and covered by said policy? In this connection I instruct you that the term 'a complete itemized inventory' means a list of the articles of goods and merchandise comprising at the time the stock in question, sufficiently itemized to enable a person familiar with such matters and stocks to ascertain and determine therefrom with reasonable certainty the class, kinds, and amounts of the various articles or items of goods going to make up such stock, and the value thereof; and if you believe and find from the evidence that the invoice introduced in evidence and claimed to have been made after August 11, 1922, meets the requirements of the above definition, you will answer the above issue in the affirmative; but unless you do so find and believe, you will answer the same in the negative."

The jury answered the issue in the affirmative.

[1, 2] The rule requiring a complete itemized list in the inventory is to be reasonably construed. To illustrate, one of the items objected to in the list before us is "Fishhooks and lines, $20." Is it necessary that those taking the inventory should have counted the fishhooks and lines and described their size, character, and texture? We think not. We think, as the court charged the jury, that an inventory is sufficient if therefrom, with reasonable certainty, the class, kind, and amount of the various articles or items of goods going to make up such stocks and the value thereof can be ascertained by persons familiar with such matters and stock, and we conclude that it appears from the testimony that appellant's adjuster was enabled to ascertain with reasonable certainty the class, kind, and amounts of appellee's merchandise, and that he could also determine the value of the stock, which was in amount sufficient to bring appellee's loss within the three-fourths clause of the policy declared upon. We, accordingly, are of the opinion that the verdict of the jury on the issues submitted is supported by the evidence.

While other questions have been presented in appellant's assignments and propositions, we do not deem them sufficiently important to require discussion, and therefore all assignments of error are overruled, and the judgment is affirmed.